IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TOUCHMARK NATIONAL BANK,

    Plaintiff,

v.                                                        No. 1:19-cv-02354-JDB-jay

ALVIN ESCUE, PHYLLIS ESCUE,
NATHAN ESCUE, and CALVIN MOORE,

    Defendants.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANT CALVIN MOORE ONLY, ADMINISTRATIVELY CLOSING CASE, AND
REFERRING TO MAGISTRATE JUDGE FOR REPORT AND RECOMMENDATION ON
PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS

---

*INTRODUCTION AND PROCEDURAL BACKGROUND*

This action was brought on June 3, 2019, by the Plaintiff, Touchmark National Bank ("Touchmark"), against Defendants, Alvin Escue, Phyllis Escue, Nathan Escue (the "Escue Defendants"), and Calvin Moore, alleging breach of contract under Tennessee law. (Docket Entry ("D.E.") 1.) On February 13, 2020, Plaintiff moved for summary judgment as to all Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 36.) The time for response was extended to permit discovery and settlement negotiations. On September 29, 2020, a suggestion of bankruptcy was filed on behalf of Nathan Escue, indicating that he had entered into Chapter 7 bankruptcy proceedings and that, pursuant to applicable bankruptcy law, an automatic stay as to the instant action against him was in effect. (D.E. 57.) Two days later, a similar filing was docketed on behalf of Alvin and Phyllis Escue, advising the Court that they had entered into bankruptcy proceedings under Chapter 11 and that an automatic stay was in effect. (D.E. 59.)

Mediation efforts continued between Touchmark and Moore, who is acting as his own counsel in this matter. On November 9, 2020, Moore filed a response to the pending motion (D.E. 63), to which Plaintiff replied (D.E. 67). Considering the automatic stays with respect to the Escue Defendants, the Court's analysis and ruling herein are limited to Touchmark's claims against Moore.

## STANDARD OF REVIEW

Rule 56 provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law[.]" *Jordan v. Howard*, ___ F.3d ___, 2021 WL 359421, at *4 (6th Cir. Feb. 3, 2021) (citing *Liberty Lobby*, 477 U.S. at 251-55). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012)). In making its determination, "the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 251-55).

## UNDISPUTED FACTS

The following facts are undisputed. This action arises from a United States Small Business Administration ("SBA") loan (the "Loan") evidenced by an SBA Note (the "Note") dated April 29, 2016, in the principal amount of $2,300,000.00, executed by Escue Wood Treated Products, LLC (the "Company") to and for the benefit of Touchmark. In order to secure the Note, the Company executed a Security Agreement, an Assignment of Leases and Rents, and a Deed of

Trust. The Deed of Trust encumbered, among other things, real property, improvements, and fixtures located at 7095 Jones Drive in Milan, Tennessee (the "Milan Property"). The Security Agreement granted Touchmark a security interest in all equipment, fixtures, inventory, accounts receivable, instruments, chattel paper, contract rights, and general intangibles (the "Personal Property"). Plaintiff recorded a UCC-1 Financing Statement with the Tennessee Secretary of State with respect to the Personal Property. Touchmark also took as additional collateral a lien and/or deed of trust against a farm located in Alabama proffered by Alvin and Phyllis Escue (the "Alabama Property").

In order to induce Plaintiff to extend the Loan, Moore, a businessman who, according to his affidavit, invested approximately $335,000.00 in the Company and was a forty-percent shareholder therein, executed an SBA Unconditional Guarantee (the "Guarantee"). The Escue Defendants provided similar guarantees. The Guarantee contained the following language:

> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payments from Guarantor.

(D.E. 1-11 at PageID 36.)

Touchmark fully funded the Loan. The Company ultimately defaulted under the Note for failing to make payment when due and, in light of such default, Plaintiff made a written demand on March 4, 2019, upon the Company and the Defendants for the then principal balance of $2,219,290.77, plus unpaid accrued interest, late fees, and other fees and charges, within thirty days. No response was provided to the demand by the Company or any Defendant within the thirty-day period.

On May 23, 2019, the Company sought Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Tennessee, Case Number 19-11142.  Alvin Escue signed the bankruptcy petition on the Company's behalf as its Chief Executive Manager.

On August 19, 2019, the Company moved to sell the Milan Property and most of the Personal Property free and clear of all liens, claims, and encumbrances at auction.  The bankruptcy court granted the motion in an order entered October 16, 2019.  These assets were sold with Touchmark receiving $1,662,136.14 from the proceeds thereof.  Plaintiff applied the proceeds to the principal balance due and owing under the Note.   In its briefs, Touchmark avers that it is entitled, as of December 2, 2020, to judgment in the amount of $814,307.31 plus pre-judgment interest, post-judgment interest, and attorneys' fees and expenses.

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

The Court has jurisdiction over this case by virtue of the parties' diversity of citizenship and the amount in controversy.  28 U.S.C. § 1332.  In diversity cases, a federal district court is to apply the substantive law of the state in which it sits.  *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 570 (6th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

In order to prevail on a breach of contract claim under Tennessee law, a plaintiff must establish "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."  *Bynum v. Sampson*, 605 S.W.3d 173, 180 (Tenn. Ct. App. 2020) (quoting *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)), *appeal denied* (Jun. 5, 2020).  "When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written."  *Cooper v. Patel*, 578 S.W.3d 40, 47 (Tenn. Ct. App. 2018) (quoting *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct.

4

App. 2011)), *appeal denied* (Mar. 28, 2019).  "Tennessee courts give primacy to the contract terms, because the words are the most reliable indicator – and the best evidence – of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (internal quotation marks omitted).

A guarantee "is a contract and is to be construed according to the ordinary meaning of the language used and with the view to carry out the intent of the parties." *Battery Alliance Inc. v. T & L Sales Inc.,* No. W2015-00201-COA-R3-CV, 2015 WL 6873202, at *6 (Tenn. Ct. App. Nov. 9, 2015) (quoting *SecurAmerica Bus. Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *9 (Tenn. Ct. App. Aug. 26, 2011)).  "Guarantors are disfavored in Tennessee, and [courts] will construe a guaranty against the guarantor as strongly as the language will permit." *Id.* (quoting *Schledwitz,* 2011 WL 3808232, at *9).

As the Court interprets Moore's filings, the only element of Plaintiff's breach of contract claim he disputes is the existence of an enforceable contract.  First, he argues that the Guarantee was unenforceable against him because both Touchmark and the Escue Defendants assured him prior to his execution of the document that the collateral was more than sufficient to cover the debt in the event the Company defaulted.  Only after the Loan was finalized and funded did he and Touchmark discover that the Alabama Property was encumbered by a senior mortgage held by Alvin Escue's brother and that the remaining collateral was insufficient to cover the debt.  Moore maintains that, because Touchmark failed to exercise due diligence,[1] it failed to discover the insufficiency of the collateral.

---

[1] In response to Moore's contention, Touchmark indicates that it has made a claim with the title insurance company with respect to the Alabama Property.  The title company advised that it

5

In addition to the language set forth above, the Guarantee provided, under the heading "ORAL STATEMENTS NOT BINDING," that "Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee." (D.E. 1-11 at PageID 38.) By executing the instrument, Moore specifically agreed to waive defenses based on any claim that "Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as [c]ollateral"; "Lender or others improperly valued or inspected the [c]ollateral"; "[t]he [c]ollateral changed in value, or was neglected, lost, destroyed, or underinsured"; "Lender impaired the [c]ollateral"; or "Lender did not seek payment from the [b]orrower, any other guarantors, or any [c]ollateral before demanding payment from Guarantor." (*Id.* at PageID 37.) Furthermore, he "acknowledge[d] that [he] read and underst[ood] the significance of all terms of the Note and this Guarantee, including all waivers." (*Id.* at PageID 38.)

It is undisputed that the signature on the Guarantee is that of Moore. "It is well settled in Tennessee that parties to a contract are under a duty to read written agreements and are thus responsible for what they sign." *Powell v. GMAC Mortg.*, No. 3:10-CV-87, 2010 WL 2133943, at *3 (E.D. Tenn. May 24, 2010) (quoting *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 679 (Tenn. Ct. App. 2007)) (internal quotation marks omitted). The provisions of the Guarantee set forth herein are plain and unambiguous. Thus, the "Court's function is to interpret the contract as written according to its plain terms." *SunTrust Bank, East Tenn., N.A. v. Dorrough*, 59 S.W.3d 153, 158 (Tenn. Ct. App. 2001). The Guarantee, as written, plainly advised Moore that, by placing his signature thereon, he was waiving the arguments he appears to have placed before the Court.

---

may pay a claim upon final adjudication of this matter. Thus, the Court assumes that the liability imposed by it upon this Defendant may be mitigated by payment of such a claim.

He "cannot be relieved from his written obligation because of an unfortunate and erroneous assumption." *Id.* (finding that, where contract was plain and unambiguous, guarantor could not rely on statements made by lender concerning the collateral).

Secondly, Moore avers the Guarantee was a contract of adhesion and, therefore, unenforceable. In his affidavit, he states that, as a minority shareholder in the Company, he was unable to demand any desired terms in the loan documentation. Rather, he was merely presented with the Guarantee as a requirement for finalization of the Loan, which was necessary to obtain equipment and inventory.

> An adhesion contract has been defined as a standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to a form of the contract. . . . [T]he essence of an adhesion contract is that bargaining positions and leverage enable one party to select and control risks assumed under the contract. Courts generally agree that the distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.

*Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (brackets, internal citations, and some internal quotation marks omitted). Moore owned almost half of the Company and does not appear to have lacked education, business acumen, or experience. He offers nothing that would explain why a person in his position would be unable to understand the language of the Guarantee. Nor does he put forth evidence that the Loan was of the "take it or leave it" variety, that is, that entering into this particular transaction was the only way in which the Company could obtain financing. Moore had a realistic choice–accept the terms offered or walk away, either by convincing his partners to do business with another lender or selling his share of the Company. He chose to accept the terms of the Guarantee. *See Powell*, 2010 WL 2133943, at *3 (no contract of adhesion where party to loan offered by a lender was free to walk away and obtain financing elsewhere); *Nukote Int'l, Inc. v. Office Depot, Inc.*, No. 3:09-0921, 2009 WL 3840482, at *8 (M.D. Tenn. Nov. 16,

2009) (no unenforceable contract of adhesion where sophisticated business party could accept terms of contract or walk away).

Even if the Guarantee was a contract of adhesion, it would still be enforceable under Tennessee law unless "the terms [were] beyond the reasonable expectations of an ordinary person, oppressive, or unconscionable." *Hammond v. Floor & Décor Outlets of Am., Inc.*, Case No. 3:19-cv-01099, 2020 WL 6459642, at *13 (M.D. Tenn. Nov. 3, 2020) (citing *Buraczynski*, 919 S.W.2d at 320). A contract is oppressive or unconscionable where "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 503 (6th Cir. 2004) (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001)). Moore has not argued, much less established, that the Guarantee's terms were beyond the reasonable expectations of the ordinary person or that they were oppressive or unconscionable.

*CONCLUSION*

Viewing the evidence before it and drawing all reasonable inferences in the light most favorable to Moore, the Court finds there is no genuine dispute of material fact as to the existence of an enforceable contract. Accordingly, Plaintiff's motion for summary judgment as to Defendant Moore is GRANTED. Pursuant to Fed. R. Civ. P. 54(b), the Court finds this order disposes of Touchmark's claims against this Defendant and there is no just reason for delay of entry of final judgment. Therefore, the Clerk is DIRECTED to enter final judgment in favor of Touchmark against Moore in the amount of $814,307.31, plus interest accruing as of December 2, 2020, at the rate of $88.99 per day. (*See* D.E. 67-2 ¶¶ 10-11.) The Clerk is further DIRECTED to administratively close this matter. Plaintiff may reopen the case with respect to the Escue

Defendants within thirty days of the conclusion of their bankruptcy cases and the lifting of the automatic stays.  Plaintiff's request for attorneys' fees and expenses is REFERRED to the magistrate judge for report and recommendation.  Touchmark is DIRECTED to supplement its request by making such filings as are required by Fed. R. Civ. P. 54(d)(2)(B) and LR 54.1(b) of the local rules of this district.

    IT IS SO ORDERED this 18th day of February 2021.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE