IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**TOUCHMARK NATIONAL BANK,**

    **Plaintiff,**

  **v.**                                                                   No. 1:19-cv-02354-JDB-jay

**CALVIN MOORE *et al.*,**

    **Defendants.**

---

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

---

Before the Court is the motion of Plaintiff, Touchmark National Bank ("Touchmark"), for attorneys' fees, expenses, and costs pursuant to Federal Rule of Civil Procedure 54(d)(2). (Docket Entry ("D.E.") 75.) Defendant, Calvin Moore, did not submit a response, and the time for doing so has passed. This matter was referred to the undersigned United States Magistrate Judge for a report and recommendation. (D.E. 72.)

## BACKGROUND

Touchmark initiated this breach-of-contract action on June 3, 2019, against Alvin Escue, Phyllis Escue, and Nathan Escue ("the Escue Defendants"), and Calvin Moore seeking to recover funds owed to it pursuant to a United States Small Business Administration ("SBA") Loan Agreement executed by Defendants' company, Escue Wood Treated Products, LLC. (D.E. 1; D.E. 1-6.) In June 2019, Defendants' company filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Tennessee. Three months later, the Escue Defendants filed a motion to stay these proceedings pending the sale of the company's assets and

property in the bankruptcy action. (D.E. 25.) The Court stayed this matter on December 17, 2019, (D.E. 32), and lifted the stay one month later after the sale was complete, (D.E. 34).

Subsequently, Plaintiff filed a motion for summary judgment on its breach-of-contract claim, which included a request for attorneys' fees. (D.E. 36.) Before the Court could rule on Touchmark's motion, the Escue Defendants filed suggestions of bankruptcy. (D.E. 57; D.E. 59.) On February 18, 2021, the Court granted Plaintiff's motion for summary judgment as to Defendant Moore only and referred Plaintiff's request for attorneys' fees to the undersigned. (D.E. 72.)

## ANALYSIS

In diversity actions, the determination of whether to award, and the amount of, attorneys' fees is governed by state law. *Hometown Folks, LLC v. S&B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). "Tennessee follows the 'American Rule' that 'in the absence of a contract, statute or recognized ground of equity so providing there is no right to have attorneys' fees paid by an opposing party in civil litigation.'" *Id.* (quoting *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979)); *see also State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). "[P]arties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Hosier v. Crye-Leike Commercial, Inc.*, 2001 WL 799740, at *3 (Tenn. Ct. App. July 17, 2001).

Additionally, Local Rule 54.1(b) requires a motion for attorneys' fees to set forth "the authority of the Court to make such an award, why the movant should be considered the prevailing party, if such a consideration is required for the award, and any other factors that the Court should consider in making the award." This Rule also requires the motion to be supported by "an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect of the case,

and the rate customarily charged by counsel for such work" and "an affidavit or declaration of another attorney in the community, who is not otherwise involved with the case, setting out the prevailing rate charged in the community for similar services." LR 54.1(b).

In its fee petition, Touchmark avers that the fee provision in the underlying agreement does not require it to prove that it is the prevailing party to recover attorneys' fees and expenses. (D.E. 78 at PageID 537 n.6.) Nevertheless, Plaintiff asserts that it is the prevailing party in this matter as the Court granted its motion for summary judgment as to Moore and entered a judgment in its favor. (*Id.*) Further, Touchmark submits that it is entitled to recover its reasonable attorneys' fees and expenses pursuant to the SBA Loan Agreement, Note, and Unconditional Guarantee executed by Moore. (*Id.* at PageID 531, 536; *see also* D.E. 1-6; D.E. 1-7; D.E. 1-11.) Plaintiff points out that the Note allows for the recovery of, among other things, "reasonable attorney's fees and costs" incurred in collecting amounts due under the Note, enforcing the terms of the Note or other loan document, and preserving or disposing of the collateral securing the loan.[1] (*See* D.E. 1-7 at PageID 25.) Touchmark further notes that the Unconditional Guarantee provides that the guarantor, Moore, "promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorneys' fees and costs." (D.E. 1-11 at PageID 37.)

With respect to Defendant Moore, Plaintiff is clearly the prevailing party as the Court granted its motion for summary judgment and entered a judgment in its favor. (D.E. 72; D.E. 80.) Further, since Touchmark prevailed on its breach-of-contract claim against Moore, and as that agreement contains a provision entitling Touchmark to any attorneys' fees and costs incurred in enforcing the agreement, Touchmark has demonstrated that its fee petition should be granted.

---

[1] The undersigned notes that the SBA Note is signed by only Alvin Escue, the Chief Executive Manager of Defendants' company. (D.E. 1-7 at PageID 26.) The Loan Agreement and Unconditional Guarantee, however, incorporate the Note and other loan documents and were both signed by Moore. (D.E. 1-6; D.E. 1-11.)

3

As for the amount of fees sought, Plaintiff requests $253,278.15 in attorneys' fees and $3,820.45 in costs and expenses.  (D.E. 78 at PageID 535.)  In support of its request, Touchmark directs the Court to two factors enumerated in Rule 1.5(a) of Tennessee's Rules of Professional Conduct, which provides a list of ten factors to aid in the determination of the reasonableness of an attorney's fee.[2]  (*Id.* at PageID 537–38; *see also* Tenn. Sup. Ct. R. 8, RPC 1.5(a).)  The two factors on which Plaintiff relies are:  "[t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"; and "[t]he amount involved and the results obtained."  Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1), (4).  Touchmark asserts that this case involved a debt of approximately $2,200,000.  (D.E. 78 at PageID 538.)  As a result of Plaintiff's counsel's efforts, Plaintiff recovered approximately $1,600,000 towards the principal of the debt, as well as a judgment against Moore in the amount of $814,307.31.  (*Id.* at PageID 534; D.E. 80.)  This is undoubtedly a sizeable recovery, especially considering that four of the five debtors/guarantors filed for bankruptcy after defaulting on the underlying loan.

Next, Touchmark provides a detailed account of its attorneys' collection efforts beginning in March 2019.  (*See* D.E. 78 at PageID 531–35; D.E. 77-1; D.E. 76.)  Counsel's initial work included a post-default diligence review to determine what security was available to Plaintiff and the various avenues for recovering the indebtedness.  Counsel then initiated formal collection

---

[2] The ten factors enumerated in Rule 1.5(a) are:  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent; (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and (10) whether the fee agreement is in writing."  Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1)–(10).  These factors "are not exclusive and each factor may not be relevant in every case."  *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 177 n.17 (Tenn. 2011).

efforts, which required the commencement of foreclosure proceedings on two parcels of real property located in Alabama and Tennessee, respectively. During the foreclosure process, Counsel discovered that the Alabama parcel was potentially subject to a prior, undisclosed security interest held by a different creditor. Consequently, Touchmark had to make a title insurance claim on that parcel. Meanwhile, during the Tennessee foreclosure proceeding, Defendants' company filed for bankruptcy.

In the debtor's bankruptcy action, Plaintiff's counsel was involved heavily with the auction and sale of the debtor-company's real property and assets, which included work on bid procedures, sale orders, and auction terms. As mentioned above, counsel's auction and sale efforts resulted in a reduction of approximately $1,600,000 to the balance of the principal indebtedness. Following the company's bankruptcy proceeding, Touchmark's attorneys shifted their focus back to underlying case. Their work in this matter included, among other things, preparing pleadings, motion practice, including the drafting of a successful motion for summary judgment, conducting a substantial amount of discovery, and participating in mediation and a judicial settlement conference. Additionally, Plaintiff's counsel had to perform work in the Escue Defendants' individual bankruptcy actions.

Touchmark asserts that its legal team worked approximately 1,035 hours of billable time in collecting the indebtedness owed under the loan. (D.E. 78 at PageID 535.) In the affidavit of Payton Bradford, Plaintiff's counsel, Bradford states that the hourly rate for partners in this case ranged from $250 to $375 per hour; the hourly rate for associates fell between $250 to $375 per hour; and the hourly rate for paralegals and legal support staff was between $100 to $255 per hour. (D.E. 77-1 at PageID 527.) Based on its legal team's hourly rates and hours worked, Touchmark submits that its attorneys' fees total to $253,278.15. (D.E. 78 at PageID 535.) Plaintiff notes that

it is current on all of its invoices and avers that this fact further demonstrates the reasonableness of counsel's fees. (*Id.* at PageID 539.)

The time, labor, and skill required to prosecute this matter weighs in favor of counsel's fee request. This was a complex commercial loan default case that required a sound understanding of loan transactions, security agreements, and bankruptcy law, as demonstrated by the fact that Touchmark's attorneys had to initiate two separate foreclosure proceedings in two states, participate in multiple bankruptcy proceedings, and prosecute the underlying case. Moreover, based on the results obtained for their client, the substantial amount of time expended by Plaintiff's counsel appears to have been reasonable and necessary. However, upon review of the billing invoices Touchmark submitted, counsel's billable hours add up to only 992.85 hours. As such, the undersigned uses this number to calculate the amount of attorneys' fees that should be awarded to Plaintiff. Additionally, the undersigned finds that the prevailing hourly rates in this community, as set forth in the affidavit of Lewis Cobb, should be used in calculating Touchmark's attorneys' fees.

According to Cobb's affidavit, the prevailing community rate for partners in a case like this ranges from $250 to $350 per hour; $150 to $225 for associates; and $75 to $95 for paralegals and legal support staff. (D.E. 77-2 at PageID 539.) Plaintiff's legal team consisted of five partners, six associates, and eight paralegals and legal assistants. Three of the partners involved in this matter billed at a rate of $350 an hour or more, the fourth partner's hourly rate was $335 an hour, and the fifth partner's hourly rate was $250 an hour. Collectively, the partners worked 261.95 hours on this case, which amounts to $91,639 in attorneys' fees. As for the associates, each billed at a rate higher than $225 per hour, and they worked a total of 569.7 billable hours. Based on the highest hourly rate in this community, the attorneys' fees for the associates total to $128,182.50.

Lastly, the lowest hourly rate for paralegals and legal support staff was above $90 an hour; these individuals accounted for 161.2 hours of work. Based on an hourly rate of $90 per hour, these professionals accrued $14,508 in fees. In sum, when adjusted for the prevailing hourly rates in this community, Touchmark's attorneys' fees total to $233,424.50. Further, Plaintiff incurred $3,866.10 in costs and expenses. Accordingly, Touchmark is entitled to an award of $237,290.60 for its attorneys' fees, expenses, and costs.

## RECOMMENDATION

For the reasons above, the undersigned RECOMMENDS that Plaintiff's motion for attorneys' fees, expenses, and costs be GRANTED and that Plaintiff be awarded $237,290.60.

Respectfully submitted this 10th day of June 2021.

                                        s/ Jon A. York_____
                                        UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDATION.** *SEE* **28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**